UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:16-CR-083 |
| | ) | |
| JEFF LEACH | ) | |

### MEMORANDUM AND ORDER

Now before the Court is the defendant's "Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) Compassionate Release, FIRST STEP Act, and CARES Act, as Well as Appointment of Counsel." [Doc. 294].[1] The United States has responded in opposition to the motion [docs. 296, 300], and the defendant has not filed a reply within the time allowed by this Court's Local Rules. For the reasons that follow, the motion will be denied.[2]

### I. BACKGROUND

In May 2018, this Court sentenced the defendant to a 168-month term of imprisonment for conspiring to distribute methamphetamine. The defendant is presently housed at FCI Loretto with a projected release date of July 17, 2028. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Apr. 30, 2021). He now moves for compassionate release, citing the COVID-19 pandemic, "obesity and other medical conditions."

---

[1] The motion is filed *pro se* but was "[p]repared by paralegal." [Doc. 294, p. 8-9].

[2] The defendant's separate motion under 28 U.S.C. § 2255 [Case No. 2:19-cv-077, doc. 1] remains pending before the Court.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that could warrant a sentence reduction but are no longer to do so, at least as to compassionate

release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[3]

In *Jones*, the Sixth Circuit instructed that "[d]istrict courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." 980 F.3d at 1114. Subsequently, in *Elias*, the appellate court "clarified" that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." 984 F.3d at 519.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 294, Ex. 1]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

Movants bear a threshold burden of demonstrating the existence of extraordinary and compelling reasons for compassionate release. In support of his request the instant defendant cites the COVID-19 pandemic. He also argues that he suffers from "obesity and other medical conditions."

At the defendant's correctional institution, there are currently 14 inmates and one staff positive for COVID-19, with 679 inmates and 65 staff having recovered, and no

---

[3] The parties in this case have not addressed any other guideline policy statement.

deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 30, 2021). These numbers are not insignificant, but the Court simultaneously notes that outside the prison setting our nation faces an ongoing crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, the BOP's vaccination efforts are underway, with 128 staff and 351 inmates having been fully vaccinated at the defendant's prison. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 30, 2021). In fact, <u>the defendant himself has been fully vaccinated</u>. [Doc. 296, ex. 1].

As mentioned, the defendant also purports to suffers from "obesity and other medical conditions."[4] Obese persons [body mass index ("BMI") of at least 30] and overweight persons (BMI greater than 25 but less than 30) "can" be more likely to become severely ill from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 30, 2021). The higher the BMI, the greater the risk. *Id.*

---

[4] He has not, however, identified or documented those "other medical conditions."

4

No evidence before the Court confirms that the defendant is presently overweight or obese. He has submitted no medical documentation. BOP medical records provided by the United States make no mention of the defendant's height or weight. [Doc. 300]. At the time of his Presentence Investigation Report ("PSR") approximately three years ago, the defendant was 67 inches tall and weighed 180 pounds. [Doc. 247, ¶ 55]. Those numbers convert to a BMI of 28.2. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Apr. 30, 2021).

Therefore, *three years ago*, the defendant was moderately overweight. The Court observes that this condition was not sufficiently serious to prevent the defendant's extensive participation in the instant methamphetamine distribution conspiracy.[5]

The BOP's SENTRY Report shows that the defendant is categorized as Care Level 2. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Apr. 30, 2021).

---

[5] In addition to the significant quantity of drugs for which he was held responsible, the Base Offense Level component of the defendant's advisory guideline range was increased for possession of firearms, and for maintaining a premises for the purpose of distributing a controlled substance, and for his managerial or supervisory role. [Doc. 247, ¶¶ 17-19, 21].

5

Having considered the medical record presented, the Court does not find extraordinary and compelling grounds for compassionate release in this case. There is no evidence that the defendant is currently overweight or obese. He has not identified or documented the "other medical conditions" from which he purportedly suffers. He is now fully vaccinated against COVID-19. Because the defendant has not demonstrated extraordinary and compelling reasons for compassionate release, his motion will be denied for that reason alone. *Elias*, 984 F.3d at 519; *see also BellSouth Telecomms., Inc. v. Farris*, 542 F.3d 499, 505 (6th Cir. 2008) ("[I]f it not necessary to decide more, it is necessary not to decide more ….") (citation omitted).

### III. APPOINTMENT OF COUNSEL

Turning to the defendant's request for appointed counsel, there is no constitutional right to an attorney in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant.

Moreover, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion.

## IV. CONCLUSION

As provided herein, the defendant's motion for compassionate release and for the appointment of counsel [doc. 294] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge